UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION
_____

| | |
|---|---|
| **CHRIS AUGUSTINE, ET AL.** | **CIVIL ACTION NO. 06-1662-A** |
| **-vs-** | **JUDGE DRELL** |
| **AVOYELLES PARISH POLICE JURY, ET AL.** | **MAGISTRATE JUDGE KIRK** |

**R U L I N G**

Before the Court is defendants' Motion to Disqualify Expert. (Document No. 21.)  Opposition and reply briefs have been filed, and the Court finds no need for oral argument.  For the reasons outlined below, the Motion to Disqualify Expert will be granted.

Background

This lawsuit arises from plaintiffs' complaint that they, as African-American voters in Avoyelles Parish, Louisiana, are inappropriately represented on the Avoyelles Parish Police Jury ("Police Jury").  Specifically, plaintiffs contend the African-American population in Avoyelles Parish "is sufficiently compact and geographically insular to . . . constitute a majority in three of the nine single-member districts" that make up the Police Jury.  (Document No. 1, ¶ 16.)  However, the Police Jury currently only has two majority African-American districts.

The Police Jury responds that the districts are fairly proportioned and that no discrimination has taken place. (Document No. 8.)

Plaintiffs have retained Mr. Glenn Koepp as an expert in the field of redistricting. It is the Court's understanding Mr. Koepp's role will include helping plaintiffs create the proposed minority voting districts to be considered in the captioned matter.

Defendants seek to disqualify Mr. Koepp on the ground that his position as secretary of the Senate for the State of Louisiana creates an irreconcilable conflict of interest which precludes him from performing as plaintiffs' expert. Plaintiffs, however, contend Mr. Koepp has been accepted by this Court as a redistricting expert in previous litigation and that his duties as secretary of the Senate have no effect on his ability to provide expert advice regarding plaintiffs' claims against the Police Jury.

Law and Analysis

"Federal courts have the inherent power to disqualify experts . . . ." Koch Refining Company v. JENNIFER L. BOUDREAUX, MV, 85 F.3d 1178, 1181 (5th Cir. 1996). The vast majority of the jurisprudence in this area deals with questions of disqualification in which an expert was either previously retained by the adverse party in the same litigation and received confidential information from that relationship, or he was otherwise in a position through which he garnered privileged communications from the party seeking his removal. In such cases, the

appellate courts have developed relatively specific guidelines which may be used to evaluate the circumstances at hand.  Id.

However, in the instant matter, there are no allegations Mr. Koepp was previously retained by the Police Jury or has somehow yet received information the Police Jury could reasonably expect would be kept confidential.  Rather, mover contends Mr. Koepp should be disqualified "from a policy standpoint," because his position as secretary of the Senate requires him "to approve or disapprove precinct changes."  (Document No. 21.)  Neither the briefs of counsel nor the Court's own research has revealed any cases directly addressing such a situation.  Indeed, the only real guidance available appears to be the general public policy objectives that, in permitting or limiting expert testimony, the district courts should prevent conflicts of interest and maintain the integrity of the judicial process.  See English Feedlot, Inc. v. Norden Lab., Inc., 833 F. Supp. 1498, 1504-05 (D. Col. 1993).

There is no dispute Mr. Koepp is currently serving as the secretary of the Senate for the State of Louisiana.  According to the Senate Rules of Order, the secretary is elected by the members of the Senate every four years. (Rule 3.6.)  As secretary, Mr. Koepp is the chief administrative officer of the Senate and attorney for the Senate, whose enumerated duties include the following:

> (1)   Advise the officers and members of the Senate on parliamentary procedure and the Senate rules when called upon to do so.

3

> (2) Be responsible for the keeping of all bills, resolutions, joint resolutions, papers, and records of the Senate and records of the proceedings and actions of the Senate.
>
> * * *
>
> (5) Supervise and direct all Senate employees and report to the President the failure of any employee or the Sergeant at Arms to perform his duties.
>
> * * *
>
> (8) Perform all other duties prescribed by law, by these rules, or by the Senate.

(Rule 3.7.)

Some of Mr. Koepp's "other duties," as described in Rule 3.7(8) may be found in the Louisiana Election Code. Specifically, La. R.S. 18:1902 provides, in pertinent part:

> A. The secretary of the Senate and the clerk of the House of Representatives, or their designees, jointly, shall serve as the state liaison with the United States Bureau of the Census on all matters related to the tabulation of population and other census information for purposes of reapportionment. The secretary and the clerk, jointly, may submit to the bureau, on behalf of the state, a plan identifying the geographic areas for which specific tabulations of population or other census information are desired for reapportionment purposes . . . .
>
> B. The secretary of the Senate and the clerk of the House of Representatives, jointly, shall furnish **the parish governing authorities**[1] . . . instructions and assistance to enable them to provide the secretary and the clerk such maps and information as may be necessary to comply timely with the census bureau requirements. (Emphasis added.)

---

[1]There is no dispute that the Avoyelles Parish Police Jury is the "parish governing authority" as contemplated under the relevant sections of the Louisiana Election Code. (See Document Nos. 1 and 8, and La. R.S. 33:1221, *et seq.*)

4

Additionally, La. R.S. 18:1903 explains that any court-ordered change in boundaries of an election precinct must be given to the secretary of the Senate and the clerk of the House of Representatives.  Also, under La. R.S. 18:532(E)(1), each parish governing authority must "coordinate with the secretary of the Senate and the clerk of the House of Representatives, or their designees, . . . to submit a plan for census data for reapportionment . . . and shall adopt or adjust precinct boundaries as may be necessary . . . ."  Finally, La. R.S. 18:532.1(C)(2)(a) requires,

> In determining features to be used as precinct boundaries, the parish governing authority shall consult with the secretary of the Senate and the clerk of the House of Representatives or their designees.[2]  The parish governing authority shall submit proposed changes in precinct boundaries to the secretary and the clerk or their designees on United States Bureau of the Census maps . . . . No change in a precinct boundary may be made by the parish governing authority without prior review and approval by the secretary and the clerk or their designees . . . .

A reading of these statutes in light of the legislative purpose behind them belies plaintiffs' argument that the secretary of the Senate's authority to approve reapportionment plans is merely perfunctory.  Indeed, as the United States Supreme Court has made clear, under the equal protection clause of the Fourteenth Amendment,

> [W]hen the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance, or local charter, it must insure [*sic*] that those

---

[2]As discussed above, although this case does not yet present a situation in which the expert is "switching sides," the secretary of the Senate's duty to "consult" with the parish governing authority (the Police Jury) regarding precinct boundaries foreshadows a scenario in which Mr. Koepp could, or may inevitably, find himself on both sides of the proverbial fence.

5

qualified to vote have the right to an equally effective voice in the election process.

Avery v. Midland County, 390 U.S. 474, 481 (1968).

Thus, Mr. Koepp, as the secretary of the Senate, is charged with responsibilities of constitutional proportions to help safeguard the interplay between the census process and the apportionment of voting precincts. Under these circumstances, Mr. Koepp must remain completely impartial and free from any potential conflict of interest. The importance of this duty is underscored by, and memorialized in, the Code of Governmental Ethics, La. R.S. 42:1101, *et seq.*,[3] particularly, La. R.S. 42:1111, which provides, in pertinent part:

> **C.  Payments for nonpublic service.**
>
> (1)  No public servant[4] shall receive any thing of economic value for any service, the subject matter of which:

---

[3]The purpose behind the Code of Governmental Ethics is enunciated as follows: It is essential to the proper operation of democratic government that elected officials and public employees be independent and impartial; that governmental decisions and policy be made in the proper channel of the governmental structure; that public office and employment not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government. The attainment of one or more of these ends is impaired when a conflict exists between the private interests of . . . a public employee and his duties as such. The public interest, therefore, requires that the law protect against such conflicts of interest . . . without creating unnecessary barriers to public service.

La. R.S. 42:1101(B).

[4]"Public servant" is defined as a "public employee," which is, in turn, defined as "anyone, whether compensated or not, who is: (a) An administrative officer or official of a governmental entity who is not filling an elective office. . . [;] (c) Engaged in the performance of a governmental function[;] [or] (d) Under the supervision or authority of an elected official or another employee of the governmental entity." La. R.S. 42:1102(18) and (19). "Governmental entity" is defined as "the state or any political subdivision which employs the public employee . . . ." La. R.S. 42:1102(12).

6

>> (a) Is devoted substantially to the responsibilities, programs, or operations of the agency of the public servant and in which the public servant has participated . . . .

* * *

> **E. Payments for rendering assistance to certain persons.**
>
> (1) No public servant, and no legal entity of which such public servant is an officer, director, trustee, partner, or employee, or in which such public servant has a substantial economic interest, shall receive or agree to receive any thing of economic value for assisting[5] a person in a transaction, or in an appearance in connection with a transaction, with the agency of such public servant.

The Court is not suggesting Mr. Koepp or his company (Redistricting, L.L.C.) has transgressed these ethical precepts. Rather, the rules are simply stated to demonstrate the reality that Mr. Koepp's dual roles as plaintiffs' expert and as secretary of the Senate, as described above, overlap uncomfortably and unacceptably in this case. There is no question Mr. Koepp is competent to testify as an expert in reapportionment matters. Indeed, this Court previously overruled a similar motion to disqualify Mr. Koepp from testifying regarding opinions he developed as an expert for different plaintiffs *before* he was elected secretary of the Senate.[6] However, now that Mr. Koepp *does* hold that post, the Court's duty to protect the integrity of the judicial process will not allow Mr. Koepp to give

---

[5] "'Assist' means to act in such a way as to help, advise, furnish information to, or aid a person with the intent to assist such person." La. R.S. 42:1102(4).

[6] See "Charles E. Guillory, et al. v. School Board of Avoyelles Parish, et al.," bearing Civil Action Number 03-0285-A on the docket of the United States District Court, Western District of Louisiana, Alexandria Division.

opinion testimony on issues so intimately intertwined with the subject matter of his public employment.  Given the strength of Louisiana's stated public policy on the statutory role of the secretary of the Senate, we cannot accede to plaintiffs' arguments in brief that the approval by Mr. Koepp (in his position as secretary) is merely administrative or ministerial.  As Louisiana's liaison to the United States Bureau of the Census, and in the certifications he obviously must make regarding reapportionment in complying with the Voting Rights Act (42 U.S.C. § 1973, *et seq.),* his level of public responsibility is such that even the appearance of impropriety must be avoided.

Conclusion

For the reasons set forth above, defendants' Motion to Disqualify Expert (Document No. 21) is GRANTED.

SIGNED on this 29th day of October, 2007, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge