RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 5/18/09
BY ___

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| CHRIS AUGUSTINE, et al. | CIVIL ACTION NO. 06-1662 |
| -vs- | JUDGE DRELL |
| AVOYELLES PARISH POLICE JURY, et al. | MAGISTRATE JUDGE KIRK |

## RULING

This court held a hearing on April 16, 2009 on plaintiffs' motion to determine which is the "prevailing party" in this case. (Doc. 66.) Determination of prevailing party status is a threshold issue to plaintiffs' claim for attorney's fees. Having analyzed the parties' arguments, supporting memoranda, witness testimony, and documentary evidence in light of the applicable law, we must decline to name plaintiffs the prevailing party in this action. As such, plaintiffs' motion will be DENIED by a separate judgment.

### I. Background

There is an identity of plaintiffs' counsel and defense counsel (as well as several named plaintiffs) between the instant action against the Avoyelles Parish Police Jury ("Police Jury suit") and the 2003 suit against the Avoyelles Parish School Board ("School

Board suit"). In the School Board suit, plaintiffs sought declaratory and injunctive relief, alleging that member election districts violated the Voting Rights Act of 1965 because minorities were not sufficiently represented on the board. After years of work by their respective experts, in July 2006 the parties agreed to a school board redistricting plan and submitted it to this court. The plan ensured a minority-majority district in three of the nine districts represented on the school board, up from two out of nine before the parties' negotiations. This court approved the plan and signed a consent decree and order to that effect on August 2, 2006. The parties' agreement expressly identified the School Board suit plaintiffs as the prevailing party and consented to the sum of $80,000.00 for reasonable attorney's fees and costs.[1] Thus concluded this court's direct involvement with the School Board suit.

On September 5, 2006, a named plaintiff in the School Board suit wrote a letter to all members of the Avoyelles Parish Police Jury. (JE 1.) Like the parish school board, the parish police jury also has nine members representing nine districts, a plan approved and used for elections since 1998.[2] At the time of the letter, two of the nine police jury districts were minority-majority districts. The letter inquired as to the jurors' positions on reapportionment: specifically, their willingness to increase the number of minority-majority police jury districts from two to three in light of the outcome of the School Board suit. The September 5 letter also demanded a written response within only a couple of

---

[1] *Guillory v. Avoyelles Parish Sch. Bd.*, No. 03–285 (W.D. La. Aug. 2, 2006) (Docs. 41–42, consent judgment and order entered in School Board suit).

[2] As each entity is convened for a different purpose, the nine police jury districts do not exactly coincide geographically with the nine school board districts.

days of the police jury's September 12, 2006 meeting. The letter did not follow *any* of the established procedures for getting an item on a board agenda. Likewise, the writer did not attend the September 12 meeting. Neither the agenda nor minutes from this meeting are in the record, so it is unclear whether the letter was discussed in an open meeting or executive session at all. In any event, on September 8, 2006, prior to the jury's meeting, Avoyelles Parish Police Jury President Henry Hines sent a letter to the Louisiana Attorney General seeking an opinion. (JE 6.) The letter opens, "The Avoyelles Parish Police Jury is examining issues of reapportionment and redistricting." The police jury went on to seek an opinion on three specific details related to reapportionment and redistricting:

1) What differences in State law must a police jury government follow in reapportionment/redistricting versus a school board?
2) Are there any time limitations that a police jury must avoid in the conduct of creating a new reapportionment/redistricting plan?
3) Are there any other State laws pertaining to precincts and reapportionment/redistricting plans and changes that the Avoyelles Parish Police Jury should be cognizant of prior to adjusting its election districts similarly to the Avoyelles Parish School Board compromise plan?[3]

This was as far as the police jury got, however, before the plaintiffs came to court.

The Police Jury suit was filed on September 26, 2006, less than two months after the consent decree in the School Board suit, and less than three weeks after the attorney general opinion was requested. The complaint was familiar: plaintiffs sought declaratory and injunctive relief against the police jury, alleging that member election

---

[3] *See* La. Att'y Gen. Op. No. 06-0262 (Dec. 18, 2006) (restating the police jury's questions before opining that "[t]he Avoyelles Parish School Board compromise reapportionment plan can have no effect on the reapportionment of the Avoyelles Parish Police Jury").

3

districts violated the Voting Rights Act of 1965 because minorities were not sufficiently represented on the police jury.[4]

After the filing of the suit the police jury enlisted its demographers once more, and the police jury's meeting minutes for the ensuing months and years reflect the consideration of the many legal and practical details of adopting a new election district map. Although its principal demographer, Heather Urena, advised that, in her view, reapportionment was *not* legally required based upon the parish's racial mix, the police jury advised her consistently that it wanted to press forward with the nine-three concept. On December 11, 2007, less than a year after the attorney general's response to its opinion request, the police jury unanimously adopted the three minority-majority district plan worked up by its demographers. In the months after this, the Voting Rights Act procedures were carried out, with the new ordinance being reviewed for Voting Rights Act compliance by the United States Department of Justice. *See* 42 U.S.C. § 1973c (2003). Finally, in December 2008 this court was presented with the "Avoyelles Parish

---

[4]   Specifically, plaintiffs sought to have the court:

   (1)   enter a declaratory judgment that the present method and plan of and for electing the members of the Avoyelles Parish Police Jury is in violation of the . . . Constitution . . . and . . . Voting Rights Act . . . and enter a permanent injunction directed to the defendants against its further use;
   (2)   enjoin the qualifying period which begins September 4, 2007 and the primary election set for October 20, 2007;
   (3)   order into effect new procedures or plans for election of Avoyelles Parish Police Jury members which provides Plaintiffs a remedy for the violations of their rights described above[.]

(Doc. 1.) These remedies claimed by plaintiffs are equitable in nature.

Police Jury Voluntary Reapportionment Plan."[5] Plaintiffs agreed on its contents and, after a hearing on January 6, 2009, we entered an order adopting the plan as to form (subject to its preclearance by United States Department of Justice and approval by the Louisiana Legislature). (Doc. 72.) The matter before the court being thus concluded, plaintiffs moved to be declared the "prevailing party" in this litigation under Section 1988 so as to recoup attorney's fees. 42 U.S.C. § 1988(b) (2003) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."); accord id. § 1973l(e) (providing for "a reasonable attorney's fee" to "the prevailing party" in a Voting Rights Act enforcement action).

II. **Analysis**

Congress provides authority for the award of attorney's fees to the "prevailing party" in suits under several remedial civil rights statutory regimes, one of which is the Voting Rights Act. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602–03 & n.4 (2001) (noting that the Court "interpret[s] these fee-shifting provisions consistently" owing to their "nearly identical" language). In Buckhannon, the Supreme Court determined the issue of "whether [the term "prevailing party"] includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." The Court

---

[5] The plaintiffs dispute the plan's "voluntary" character and insist they were involved in its creation. Having heard the January 6, 2009 testimony of the plaintiffs' demographer, Secretary of the Louisiana State Senate Mr. Glenn Koepp (stricken from serving as plaintiffs' expert in this case owing to a conflict of interest), and the defendant's demographer, Mrs. Heather Urena, we disagree that the plaintiffs were involved in any meaningful way in the creation of the Avoyelles Parish Police Jury Voluntary Reapportionment Plan.

5

answered simply: "We hold that it does not." *Id.* at 600. The plaintiffs in *Buckhannon* only sued for declaratory and injunctive relief, claiming that a West Virginia law violated their rights under the Fair Housing Act and the Americans with Disabilities Act. While their underlying case was pending at trial, the state legislature amended the allegedly offending law under which plaintiffs sued, and their case was dismissed as moot. The plaintiffs sought attorney's fees, arguing that they were the prevailing party because their suit was the catalyst for the legislative change that mooted the case. On appeal the Supreme Court rejected the often subjective, fact-intensive and causation-oriented "catalyst theory" relied upon by plaintiffs for an award of attorney's fees. The catalyst theory approach would "allow[] an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. The Court noted that it had never before given the catalyst theory its express blessing, and although it had been relied upon by the lower courts, its prior decision in *Farrar v. Hobby*, 506 U.S. 103 (1992), was not determinative of the issue. *Buckhannon*, 532 U.S. at 603 n.5. Indeed the principal legal issue determined in *Buckhannon* was whether the catalyst theory previously and generally applied in the courts of appeal had any viability. Answering that question negatively, *Buckhannon*'s effect was to limit recovery of attorney's fees to the prevailing party, defined as those who had obtained "enforceable judgments on the merits" or "court-ordered consent decrees," each of which does "create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604. The catalyst theory had allowed causation in such cases to be "determined

by considering the 'chronology of events in order to assess the provocative effect of the plaintiff's lawsuit.'" *Craig v. Gregg County*, 988 F.2d 18, 21 (5th Cir. 1993).[6]

The only significant difference between this case and *Buckhannon* is that the present case was not dismissed as moot after the police jury's December 11, 2007 adoption of the new election plan as a police jury ordinance. This otherwise distinguishing procedural detail is immaterial to our purposes. Because this is a matter dealing with the elective franchise, the matter was not simply over and done with once the police jury adopted the new plan ordinance. The Voting Rights Act requires that any such new ordinance be precleared for compliance by the United States Department of Justice. *See* 42 U.S.C. § 1973c (2003). However, this case is similar to *Buckhannon* in that the Avoyelles Parish Police Jury voluntarily amended the allegedly unconstitutional apportionment plan prior to this court's rendition of a judgment or consent decree on the merits where plaintiffs had sought only equitable relief. The police jury—even prior to the time plaintiffs filed their complaint—had already undertaken the long, tedious process of electoral redistricting. (JE 6.) Plaintiffs, then, were asking this court to command that the police jury do what was already being done. As the Fifth Circuit has elsewhere noted, "[a] civil rights plaintiff would not be entitled to receive attorneys fees for demanding that [the governmental entity] do something that it was going to do anyway. . . . Late arrivers cannot jump the train as it leaves the station and hope to seize prevailing party status." *Craig*, 988 F.2d at 21.

---

[6] *Craig* is not included in the illustrative list of the lower courts' catalyst theory cases collected in *Buckhannon*, but its basis for decision is nonetheless definitively rejected in *Buckhannon*.

In regard to *Craig* we observe that plaintiffs would not be the prevailing party even under its now-defunct catalyst theory approach. "Factors suggesting that plaintiffs are not entitled to fees include situations where a government entity is already 'diligently working to have a redistricting plan submitted' when plaintiffs filed suit...." *Id.* We do not decide this matter under the catalyst theory. Still, we observe that clear, chronological evidence of non-causation can be entirely relevant to a court's determination of prevailing party. *Cf. Envtl. Conserv. Org. v. City of Dallas*, 307 Fed. App'x 781 (5th Cir. 2008) (affirming a district court's denial of prevailing party attorney's fees where, as an adjunct reason for denial, the district court evaluated the attorney fee claim on catalyst theory grounds). The *conduct* of the parties and the *degree* of their participation and actions in effecting a result still may be a matter for the court's evidentiary analysis in determining the prevailing party issue.

It should be recalled that the *Buckhannon* Court accorded prevailing party status only to those parties who had secured "enforceable judgments on the merits and court-ordered consent decrees." *Buckhannon*, 532 U.S. at 604. Only these[7] judicially sanctioned outcomes "create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* In sum, "to be a prevailing party, a plaintiff must '(1) obtain actual relief, such as an enforceable judgment or a

---

[7] This court observes, however, that the courts of appeals have been forced, of necessity, to broaden these categories of judicial action. "Although an enforceable judgment on the merits and a court-ordered consent decree have sufficient judicial *imprimatur*, these examples are not exclusive. As a result, lower courts have had difficulties in ascertaining what other forms of judicial action have the 'necessary judicial *imprimatur*' to create prevailing party status..." *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) (considering the case of a preliminary injunction) (citations omitted). We have no such trouble here, however, because we consider the suit by plaintiffs, through their attorney, to be entirely opportunistic.

consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement.'" *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) (citation omitted).

After the police jury submitted its "Avoyelles Parish Police Jury Voluntary Reapportionment Plan" in December 2008, to which all parties agreed, this court approved and adopted the plan as to form by way of an "order". (Doc. 72.) Even looking beyond the mere nomenclature of the order's title,[8] it is not sufficiently possessed of the characteristics of a consent decree to suggest that this court has placed its judicial *imprimatur* on the outcome. An en banc opinion by the First Circuit highlights "three related factors" of *Buckhannon* that assist in fleshing out the law of consent decrees:

> The first [factor] was that the change in legal relationship must be "court-ordered." *See Buckhannon*, 532 U.S. at 604. Second, there must be judicial approval of the relief vis-à-vis the merits of the case. *Buckhannon* cited *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 381 (1994), which held a "judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." Third, there must be judicial oversight and ability to enforce the obligations imposed on the parties. *See Buckhannon*, 532 U.S. at 604 n.7 (noting that judicial oversight is inherent in consent decrees but not in private settlements).

*Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009) (en banc) (internal citations edited for clarity).

---

[8] *Cf. Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009) (en banc) ("We agree with other circuits that the formal label of 'consent decree' need not be attached; it is the reality, not the nomenclature which is at issue.") (footnote omitted). "Sometimes the question has been phrased in terms of whether a given court order is the 'functional equivalent of a consent decree'; the better articulation may be to ask whether the order contains the sort of judicial involvement and actions inherent in a 'court-ordered consent decree.'" *Id.* (collecting cases).

In this case, our order notes the parties' approval and adopts the plan as such, then "requires" the police jury to submit the plan to the Department of Justice and, upon its approval, furnish evidence thereof to this court. (Doc. 72.) In other words, we only asked that the police jury do what it already had to do to comply with the Voting Rights Act. This is an exhortation to statutory compliance, not "court-ordered" relief. At no point in this case did we rule on the merits of plaintiffs' claims, and at no point did this court grant any of the relief sought in plaintiffs' complaint[9] sufficient to change the legal relationship between the parties. Importantly, the change in the parties' relationship—the new plan—was initiated prior to the plaintiffs' suit and completed entirely and voluntarily by the police jury and its experts and counsel.

By way of a comparison or to see an exemplar of a consent decree issued by the court, reference may be had to the highly detailed "Consent Judgment" that disposed of the School Board suit. This is a six-page document negotiated by the parties and then signed by them and by this court.[10] In that decree we adopted the entire substantive agreement of the parties, ordered defendants to implement the plan immediately, and declared plaintiffs the prevailing party. That is plainly contrasted with the order referenced in this case. In short, this court's January 6, 2009 order has none of the hallmarks of a consent decree or judgment on the merits as envisioned in *Buckhannon*. Plaintiffs cannot rely upon it to secure prevailing party status.

---

[9] *See supra* n.4.

[10] *Guillory v. Avoyelles Parish Sch. Bd.*, No. 03–285 (W.D. La. Aug. 2, 2006) (Docs. 41–42, consent judgment and order entered in School Board suit).

## III. Conclusion

For the reasons above, the plaintiffs in this case are not a "prevailing party" under the Voting Rights Act of 1965. Plaintiffs' motion (Doc. 66) will be DENIED by separate judgment.

SIGNED on this 18th day of May, 2009 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE